John McCahan, Administrator of John A. Nash, deceased, v. S. S. Smith, Surviving Partner of the late firm of S. S. Smith & Son, Appellant.

*Statute of limitation pleaded—Proof to toll—Binding instructions.*

Where the statute of limitation is pleaded, it is incumbent upon the plaintiff to prove either an original obligation, or a new promise reviving a former obligation given, infra sex annos.

There having been a dissolution of defendant firm, and the statute of limitation having been pleaded, where no debt could have been contracted, in the firm name, the defendant is entitled to binding instructions.

*Dissolution of partnership—Authority of surviver to contract—Statute of limitations—Revival by implied promise.*

The dissolution of a partnership puts an end to the authority of the surviving partner and operates as a revocation of all power to create new contracts; hence, an express promise by a partner after a dissolution will not take the debt out of the statute of limitations so as to make the copartnership liable; nor can a revival of the obligation be implied from the fact that the surviving partner as subscriber to a newspaper was charged with knowledge of the publication of certain advertisements with the result of an implied promise of payment by the firm.

Argued Oct. 25, 1898.    Appeal, No. 97, Oct. T., 1898, by defendant, from judgment of C. P. Huntingdon Co., Sept. T., 1897, No. 47, on verdict for plaintiff.    Before RICE, P. J., REEDER, W. W. PORTER and W. D. PORTER, JJ.    Reversed.

Assumpsit.    Before BAILEY, P. J.

It appears from the record and evidence that S. S. Smith and W. H. Smith, father and son, were partners doing business in Huntingdon previous to 1876, and from that time until January 23, 1891, when the partnership was dissolved by the death of W. H. Smith, the son.    On April 28, 1876, an advertisement of the defendant's business appeared in " The Journal," a weekly newspaper published in Huntingdon, Pa., marked " Apl. 28, 1876, Y. "    Evidence was given to show that when " Y " was inserted it meant for one year.    On April 26, 1878, a double column embellished advertisement of the music store of S. S. Smith & Son appeared in the same paper.    It was marked " Apl. 26, 1876. 6 mos. "    The two advertisements were con-

tinued without change for nearly twenty years with the same contract appended to them and evidence was introduced tending to show that they were what is known to printers as "deadheads." Evidence was introduced tending to show that no bill was ever presented to the firm or surviving partner by Mr. Nash nor was any suit ever brought for its recovery. Mr. Nash died on December 21, 1896, and this suit was brought by John McCahan, his administrator, against the late firm of S. S. Smith & Son, and the statement claimed the sum of $1,993 for these two advertisements. The suit was brought August 31, 1897, six years and seven months after the dissolution of the firm of S. S. Smith & Son by the death of its junior member. To this claim defendant pleaded the statute of limitations.

Verdict and judgment for plaintiff for $318.14. Defendant appealed.

*Errors assigned* among others were (1) in admission of testimony under the following offer: "We propose to show by the witness on the stand the publication of the advertisement, for which the suit is brought by reference to the files of the paper. Objected to; at this stage of this case there has been no contract shown. Evidence received and bill sealed for defendant." (2) In its admission of testimony under the following question: "Will you state whether the published rates of the Journal are for advertisements—one-fourth column?" (3) In its admission of testimony under the following offer and objection: "I offer in evidence execution No. 27, April term, 1873, issued the 5th of February, 1873, J. R. Simpson against J. R. Durborrow, for the purpose of showing the transfer of Mr. Durborrow's interest in this paper and business as far back as 1873. Objection. Received in evidence, bill of exceptions sealed for defendant." (4) In its admission of the books of John A. Nash, deceased, under several different offers and objections, the objection being that the entry in the books was dated May 24, 1878, or more than eighteen years before suit was brought, and that it was a lump charge. The books were received whenever offered, objection overruled and bill sealed. (6) In declining defendant's second point, which is as follows: "2. After the dissolution of the firm of S. S. Smith & Son,

no debt such as that for which the suit is brought, could have been contracted in the firm name." (7) In refusing defendant's third point, as follows : " 3. The defendant having plead the statute of limitations, and no debt of the firm having been shown to exist within six years from the bringing of this suit, the verdict must be for the defendant." (9) In charging the jury as follows : " William H. Smith, one of the members of the firm of S. S. Smith & Son, died in January, 1891. His death dissolved the firm, but these advertisements continued in the paper. S. S. Smith, this defendant, was a subscriber to the paper, and it is reasonable to suppose that these services were rendered by Mr. Nash, although no express contract is shown to have existed between him and Nash that he would pay for them. Yet if they were rendered and the firm of S. S. Smith & Son accepted the benefit of them with knowledge that they were rendered, the law implies a promise to pay what they were reasonably worth." (10) In charging the jury as follows : " Under this view of the case we instruct you that this plaintiff is entitled to recover for all services rendered to this defendant or to the firm of S. S. Smith & Son within six years from the bringing of this action, if you find from the evidence that this defendant knew that the services were rendered. If he did know and accepted the benefit of them without dissent, the law implies a promise to pay for them whether or not there was an express contract that they should be paid for." (11) In charging the jury as follows : " Therefore, gentlemen, you will determine the fact whether or not the defendant knew these advertisements were inserted in the Journal newspaper, and whether they were continued after the death of William H. Smith, the same as before. If you find that he did not, then your verdict should be for the defendant. If on the other hand, you find from the evidence he did so know, then your verdict will be for the plaintiff for the amount you find the services were reasonably worth." (12) In charging the jury as follows : " If therefore you find for the plaintiff the fact we have submitted to you, you will allow him for both advertisements at the rate of $60.00 per year from the 31st day of August, 1891, to the 1st day of August, 1896, which would be fifty-nine months, and interest from August 1, 1896, the date when the services ended."

*W. McK. Williamson*, for appellant.—As to the seventh assignment of error, the question raised by the defendants' third point was the statute of limitations.   The defendants had filed a special plea and it was surely a good defense.   There can be no question but that the statute of limitations applies to an action against a surviving partner and in fact all partnership transactions as well as to any other.   It is a quieting statute and intended to make people diligent: Hamilton v. Hamilton, 18 Pa. 20; McKelvy's Appeal, 72 Pa. 409; but it seems useless to multiply authorities on as plain and well settled a proposition. Here were two old advertisements that had run before the dissolution of the partnership for thirteen and fifteen years respectively and after the dissolution of the firm were continued for more than six years ; no contract, no order for their continuance was even alleged; each of them were marked with the time that they were to be put in.   What obligation was the surviving partner under to even notice them?   They were deadheads and so plainly marked.   This point should have been affirmed and binding instructions given to find for the defendant.   The refusal to affirm this point was error.

As to the ninth assignment of error, there might be something in what the learned judge says about reasonable suppositions had not the advertisements both been marked plainly to show what the contract was and that it was long since out.   Doubtless the learned judge had forgotten this evidence also, at least he did not, as it was his duty, call the attention of the jury to it.   It entirely changes the presumption and was an error.

The tenth, eleventh and twelfth assignments of error may be treated together.   They positively and emphatically directed the jury to find for the plaintiff provided they found the one fact that Mr. Smith knew the advertisements were kept in the paper.

In connection with the fact that both these advertisements were plainly marked showing how long they were to be kept in, that no demand in the lifetime of Mr. Nash had ever been made for the payment of either, it was certainly a question for the jury to determine whether or not they were deadheads.   The learned judge seemed to have forgotten all about this evidence or else his imperative charge would not have been delivered.

*J. F. Schock,* for appellee.—No proof of any prior contract was needed, for it has not been contended these advertisements were fabricated by Mr. Nash and published without authority at the beginning.   The law presumes the contrary.

The evidence admitted under the offer complained of in the second assignment was the second necessary step in establishing an implied contract.   Later in the trial the book of Mr. Nash was offered in evidence, showing that Mr. Nash had charged for said services $30.00 a year for each advertisement.

It thus appears that these entries were begun by Mr. Nash when he commenced to publish the advertisements and were completed by him by inserting the length of time and the price, when he had finished the publication on or about August 1, 1896.   Such entries are evidence : Koch v. Howell, 6 W. & S. 350 ; Bolton's Appeal, 3 Grant, 204 ; Molony v. Benners, 3 Grant, 233.

It is not a valid objection that part of the entries are in lead pencil : Hill v. Scott, 12 Pa. 168.

And the publication being by the year and the number of years and rate being itemized they are not lump charges.

The court submitted to the jury all the disputed facts there were in the case, charging them, in effect, that if they found that the services claimed for were rendered by Mr. Nash, were continued after W. H. Smith's death and S. S. Smith knew they were so continued, then as a matter of law they should allow the plaintiff's claim to the extent of all services rendered within six years before suit was brought.   The jury under this fair submission of the case to them found these several facts all against defendant, and it is because of their having so found the facts and not that the court assumed the facts that there is judgment against defendant.

OPINION BY WILLIAM W. PORTER, J., January 18, 1899 :

On April 28, 1876, and April 26, 1878, respectively, two advertisements were inserted in the Huntingdon Journal by the firm of S. S. Smith & Son.   The publication of these seems to have been continued without alteration or interruption down to August 1, 1896.   Meanwhile, the firm of S. S. Smith & Son was dissolved by the death of the son on January 22, 1891.   The proprietor of the Journal died in 1896.   Thereupon this suit

was brought by the administrator of his estate for $1,993.33 for the publication of the advertisements. "S. S. Smith, surviving partner of the late firm of S. S. Smith & Son," was named as defendant.

There was no proof of demand having been made for payment until just prior to the bringing of suit. The defendant was not permitted to testify because of interest. The suit was based on an obligation to pay implied by reason of the services having been rendered with the presumptive knowledge of the defendant. The claim was limited by the court (the plea of the statute having been entered) to the period of six years next preceding the bringing of the suit. Proof was made of the appearance of the advertisements in the several issues of the paper, and of a book containing two equivocal entries against S. S. Smith & Son, under date of May 24, 1878, wherein the firm is charged with the publishing of the advertisements for eighteen years. The evidence of knowledge by the defendant of the publication of the advertisements consisted in showing that he was a subscriber to the paper for the period during which the advertisements appeared.

An important fact, developed by the testimony, was that certain marks were appended to the advertisements. At the bottom of one was "April 26–6 m.," and of the other, "April 28, 1876–Y."

At the trial, the then editor of the paper testified as to the first, "That would indicate that the advertisement was to be in for six months from that time," and as to the second, "That is marked 'April 28, 1876–Y' for one year, I suppose, or yearly. . . . . Does not that indicate that it was put in for one year? If there was an '1' before the 'Y,' it would mean that. You don't know what the 'Y' means? Not exactly." This evidence was drawn from the plaintiff's witness. The marks on the advertisements, as thus interpreted, went far toward rebutting the presumption contended for by the plaintiff, namely, that the publications, having been continued with the probable knowledge of the defendant, were to be paid for. This evidence was wholly unnoticed by the trial judge in his charge. It should, at least, have led him to extend the inquiry of the jury beyond the single question, whether the defendant knew of the insertions of the advertisements.

It is to be observed that this suit is brought against the defendant as the " surviving partner of the late firm of S. S. Smith & Son." It is to recover for the publication of advertisements of the business of the firm.

Where the statute of limitations is pleaded, it is incumbent upon the plaintiff to prove either an original obligation, or a new promise reviving a former obligation given, infra sex annos.

The partnership of S. S. Smith & Son was dissolved by the death of the son on January 22, 1891, more than six years before the bringing of this suit. It was not possible for the surviving partner to give an original obligation binding upon the dissolved firm. " The law is well settled that after dissolution of a partnership, the partners cease to have any power to make a contract in any way binding on each other. The dissolution puts an end to the authority and operates as a revocation of all power to create new contracts : " READ, J., in Reppert v. Colvin, 48 Pa. 248 ; Kauffman v. Fisher, 3 Gr. 302.

The following point of charge was submitted to the trial judge, and refused : " After the dissolution of the firm of S. S. Smith & Son, no debt, such as that for which this suit is brought, could have been contracted in the firm name." This point should have been affirmed.

The plaintiff's claim extends far back of the period of six years before suit brought. The court correctly held that he could not recover for more than six years by reason of the statute. The plaintiff did not attempt to prove a new express promise on the part of the defendant to pay within the six years. The proof was limited to the publication of the advertisements and to the fact that the defendant was a subscriber to the paper. By this he was to be charged with knowledge of the publication and with an implied promise to pay.

Even if it be conceded that the proof submitted might charge the defendant personally, it is insufficient to sustain an action against him as a surviving partner. The defendant was entitled to an affirmance of the following point, which was refused : " The defendant having plead the statute of limitations, and no debt of the firm having been shown to exist within six years from the bringing of the suit, the verdict must be for the defendant."

But viewing this case in the light of an attempt to revive a

partnership debt, an express promise by a partner after dissolution will not take the debt out of the statute of limitations so as to make the copartnership liable: Reppert v. Colvin, supra. " The theory of the law on this head, as held by the courts of Pennsylvania, is not that the old promise is revived, but that the subsequent confession of the debt is evidence of a new one, and he, who has no authority to act for another, cannot bind him by acknowledging that he is indebted, or by expressly promising for him that he shall pay. Now, by the dissolution of a partnership, the power, which each had to bind the others, is at an end, except for the purpose already indicated,—to finish what remains to be done in order to close its concerns: " GIBSON, C. J., Houser v. Irvine, 3 W. & S. 345; Coleman v. Fobes, 22 Pa. 156; Stewart's Appeal, 105 Pa. 307.

True, it was held, in Reppert v. Colvin, supra, Houser v. Irvine, supra, and Wilson v. Waugh, 101 Pa. 233, that when a partner takes the stock on hand and becomes the liquidating partner, he can, under certain circumstances, by a new promise or payment on account after dissolution, take the debt out of the statute so as to make the copartners liable. But this case is not that of a revival of an old debt by a new promise. Proof of an express promise by the surviving partner has not been attempted. The obligation sought to be imposed is based upon implication. This cannot revive an obligation of the partnership dead at the hands of the statute.

This is a stale claim. The plaintiff's decedent (so far as the evidence shows) waited more than eighteen years and died without making demand for payment. The administrator may have regarded it as his duty to attempt a collection, but in the case of such a claim as this, the courts are inclined to give full effect to the statute of limitations.

The conclusions, above expressed, lead us to reverse the judgment of the court below.

Judgment reversed, and judgment is entered in favor of the defendant with costs.